**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

ATLANTIC COAST PIPELINE, LLC,

    *Plaintiff*,

    v.

0.07 ACRE, MORE OR LESS, IN NELSON COUNTY, VIRGINIA, *et al.*,

    *Defendants*.

Case No. 3:18-cv-00006-NKM-JCH

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE THE OPINIONS AND TESTIMONY OF PAYKON H. SARMADI**

Plaintiff Atlantic Coast Pipeline, LLC ("Atlantic"), pursuant to L. Civ. R. 11(c), submits this Brief in support of its Motion to Exclude the Opinions and Testimony of Paykon H. Sarmadi ("Sarmadi").

**INTRODUCTION**

Sarmadi's report and his proffered opinions fail under both Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702. At the most rudimentary level, Sarmadi failed to prepare the report that he now espouses. Rather, the report was indisputably prepared by Mark D. Pitts ("Pitts"), who has not been designated as a testifying expert. Moreover, Sarmadi failed to disclose the basis and reasons for his proffered opinions or any of the underlying facts and data. These shortcomings trigger the automatic exclusion sanction prescribed by Fed. R. Civ. P. 37(c)(1). But even if Sarmadi had satisfied Fed. R. Civ. P. 26(a)(2)(B), which he did not, his proffered opinions should be excluded nonetheless. The lack of sufficient facts and reliable methodology in Sarmadi's report renders his

opinions unreliable under Fed. R. Evid. 702. For these reasons, as more fully discussed below, the Court should exclude Sarmadi's proffered opinions and testimony.

**RELEVANT BACKGROUND**

On March 22, 2018, the Court entered a Pretrial Order, instructing the parties that "[e]xpert witnesses . . . must prepare a written report that conforms to the requirements of Rule 26(a)(2)(B)." (ECF No. 32 at 4). On October 18, 2018, Defendant Fenton Family Holdings LLC ("Fenton Holdings") served its "Rule 26(a)(2) Disclosure," attached as **Exhibit 1**, in which it designated five testifying experts. Although the list of experts included Sarmadi, who will purportedly testify about "the cost to reconstruct" the Fenton Inn, it did not include Pitts. *See generally* **Ex. 1**.

Sarmadi's report, attached as **Exhibit 2**, includes multiple components. The first is a two-page cover letter, which states the following:

> The [Fenton Inn] was visited on Tuesday, September 25, 2018. Following our site visit, observations of existing conditions, conversations with Fenton Inn personnel and collaboration with a local construction estimator, we have prepared an estimated cost analysis broken into the various construction Divisions, in accordance with current industry standards. The cost analysis is based on existing drawings provided by the Fenton Inn ownership, field observations documenting quality of work and deviations from the drawings provided, and quantities of materials taken from the field-verified existing drawings and site observations.
>
> We also estimated the cost for soft costs that would typically be needed to construct a facility such as this, including design fees, permitting fees, utility connection fees, etc. As such, we have attached a detailed cost spreadsheet identifying the various existing construction components, and the estimates to construct those components, effective the date of the property's take.

**Ex. 2**.

Next, the report includes Sarmadi's resume, Pitts's resume, a report cover page, a concept estimate page, an executive summary page, a recap page, and the nine-page report entitled "Detail of Fenton Inn." The Detail of Fenton Inn is not signed. Following that is a sheet entitled "Fenton Inn Take-Off," succeeded by four drawings, the logo for Pitts's company (Haley's Hope

2

Enterprises, LLC), and, finally, Sarmadi's information about publications, prior testimony, and compensation.

Atlantic deposed Sarmadi on February 25, 2019. A copy of that deposition transcript (without exhibits) is attached as **Exhibit 3**. On March 25, 2019, Atlantic also deposed Pitts. A copy of that deposition transcript (without exhibits) is attached as **Exhibit 4**. Finally, Atlantic designated a rebuttal cost estimator, Peter Forella ("Forella"), whose report is attached as **Exhibit 5**.

## ARGUMENT

I. **Sarmadi Failed to Comply With the Disclosure Requirements of Fed. R. Civ. P. 26(a)(2)(B), and Therefore His Report Is Subject to Automatic Exclusion.**

"Rule 26(a)(2) of the Federal Rules of Civil Procedure imposes specific requirements for the disclosure of expert testimony during the discovery period." *Campbell v. United States*, 470 F. App'x 153, 155 (4th Cir. 2012) (unpublished) (per curiam). These requirements include, among other things, (i) that the expert "prepared" the report, (ii) the "basis and reasons" for the expert's opinions, and (iii) the underlying "facts or data." Fed. R. Civ. P. 26(a)(2)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (describing this rule as an "automatic sanction of exclusion"). To avoid exclusion, "[t]he non-disclosing party bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Gomez v. Haystax Tech., Inc.*, __ F. App'x __, __, 2019 WL 1040398, at *6 (4th Cir. Mar. 5, 2019) (unpublished) (per curiam) (internal quotation marks omitted).

### A. Sarmadi did not prepare the report.

Sarmadi failed to prepare the report, as required by Fed. R. Civ. P. 26(a)(2)(B). It is undisputed that Pitts, not Sarmadi, prepared the report. *See* **Ex. 4** at 22:8-11 ("Q. And you [i.e. Pitts] said earlier that this was your report. Did you prepare this report? A. I prepared this, yeah. After the first three pages, that all appears from my report."). In fact, Pitts explicitly testified to preparing each individual component of the report. *See id.* at 105:19-107:4. This is a straightforward instance of "ghost-writing"—a practice violative of Fed. R. Civ. P. 26(a)(2)(B). *See Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291 (E.D. Va. 2001) ("Ghost writing a testifying expert's report is the preparation of the substance writing of the report by someone other than the expert purporting to have written it.").

Sarmadi's startling unfamiliarity with basic terminology, calculations, and building components within the report underscores his failure to prepare it. For example, Sarmadi does not know what certain acronyms within the report stand for. *See* **Ex. 3** at 141:16-20 ("I can't remember what [SFCA] stands for . . . ."); 192:5-6 ("Q. Do you know what 'BPOL' stands for? A. I do not actually."). He does not know how the sales tax is calculated. *See id.* at 186:2-4 ("Q. Do you know the dollar amount that that sales tax was applied to? A. That particular line item, I do not."). Sarmadi does not even know the name of the key software program used to prepare the report. *See id.* at 124:13-15 ("Q. What was the software that you used to come up with this report? A. That's a good question."). For certain building components, moreover, Sarmadi's testimony directly contradicted that of Pitts. *Compare* **Ex. 3** at 95:12-16 ("So I don't believe the board and batten would be reflected in the take-offs anywhere. . . . I think that was one of the lines that was struck because [Pitts] mistook the finish . . . ."), *with* **Ex. 4** at 50:13-51:12 (explaining that the board and batten siding was allocated to multiple line items within the cost estimate).

But even "[p]utting [Sarmadi's] apparent uncertainty as to some underlying facts aside, the fact remains that [Pitts] did not merely provide [Sarmadi] with facts and data; instead [Pitts] performed all the research, analysis, and drafting of the conclusions and opinions found in the written report." *Weitz Co. v. Lloyd's of London*, No. 4:04-CV-90353, 2007 WL 7131908 at *4 (S.D. Iowa Sept. 28, 2007). One illustrative example is Sarmadi's complete lack of knowledge about Pitts's calculation of the retaining wall area of 1,200 square feet, as shown on Page 2 of 9 of the Detail of Fenton Inn. As Pitts explained, he added 2' of height to the 10' shown in the report to account for "2 feet in the ground." **Ex. 4** at 53:14-17. Then, rather than using the 82' length shown in the report's drawings and the Fenton Inn Take-Off, Pitts used the 100' length that he had measured during his site visit. *See id.* at 53:19-54:1. By multiplying the length (100') times the height (12'), he concluded that the area of the retaining wall was 1,200 square feet. *See id.* at 55:8-11.

By contrast, Sarmadi was befuddled by this calculation. *See* **Ex. 3** at 62:9-72:2. He was clueless that Pitts had added 2' of below-ground blocks, or that Pitts had revised the length to reflect his on-site measurements. *See id.* Instead, floundering for an explanation, Sarmadi testified that an additional 380 square feet was added to account for "waste" and "additional [retaining] walls." *See id.* When probed, however, Sarmadi admitted that his report did not include anything about another retaining wall. *See id.* at 71:13-16. Moreover, Pitts specifically testified that, contrary to Sarmadi's explanation, the retaining wall calculation did not account for any waste. *See* **Ex. 4** at 56:4-6 ("Q. So you didn't account for any waste for that 1200-square-feet number? A. No, no.").

Beyond his lack of understanding about the calculations, Sarmadi never reviewed a single fact that Pitts used to prepare the cost estimate. Sarmadi explained that, to obtain the unit prices,

5

Pitts "would review previous projects that's he's compiled numbers for, and it would be based on his data and experience." **Ex. 3** at 169:21-170:1. In the same breath, however, Sarmadi testified that, "I couldn't speak to the specifics of what projects [Pitts] reviewed." *Id.* at 170:4-5. Indeed, when asked whether he had actually seen any of the projects that Pitts reviewed, Sarmadi unequivocally responded, "No." *Id.* at 170:18-171:1; *see also id.* at 184:11-13 ("Q. And do you know how many data points Mark Pitts used? A. I do not."). Pitts's own testimony confirms this point: "Q. Did you ever give Mr. Sarmadi access to the database? A. No." **Ex. 4** at 69:12-14.

Finally, Sarmadi was entirely mistaken about what he perceived to be the "historic" nature of the data used for the report. This is critical, because fair market value must be determined "at the time of the taking." *United States v. 100.01 Acres*, 102 F. App'x 295, 297 (4th Cir. 2004) (unpublished) (per curiam). Accordingly, Sarmadi wrote in his cover letter and repeatedly testified that Pitts's unit prices reflected historic costs as of January 31, 2018. *See* **Ex. 2** (stating that the report identifies costs "effective the date of the property's take"); **Ex. 3** at 159:1-3 ("Q. Mr. Sarmadi, are the costs in the detail spreadsheet the costs as of January 31st, 2018? A. Yes."). But Sarmadi was utterly wrong on this point. Pitts unmistakably testified that the unit costs reflect the then-current prices as of October 2018.[1] *See* **Ex. 4** at 61:19-62:7.

All of this evidence proves that the cost estimate "required a host of discretionary expert judgments for [Pitts], not [Sarmadi], to make." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 615 (7th Cir. 2002); *see also* **Ex. 3** at 171:20-21 ("So to a certain degree, I have to trust [Pitts's] professional judgment."); 174:15-18 ("The reason why Mark is part of the team is because of his expertise and because he's involved in the pricing side of things much more frequently."); 174:22-175:3 ("Q. Is it fair to say that you trusted the reliability of Mark Pitts' numbers in terms

---

[1] Because Sarmadi's opinions are based on prices from October 2018 rather than the date of the taking, his opinions and testimony are also unreliable and irrelevant under Fed. R. Evid. 702.

6

of unit costs? A. Yes, yes."). Moreover, "the record makes clear that [Pitts] not only prepared the draft of the [report] for [Sarmadi's] review and edit, but there is no dispute that [Pitts] provided the actual substantive content and [cost estimate] calculations central to the conclusions in the [report]." *Seahorn Inves., LLC v. Fed. Ins. Co.*, No. 1:13CV320, 2015 WL 5297264, at *9 (S.D. Miss. Sept. 10, 2015); *see also* **Ex. 3** at 160:17-20 ("Q. Who came up with those unit costs originally? A. The unit costs? I guess for the majority of the general requirements, it looks like Mark."). Therefore, because Sarmadi did not prepare the report, it fails to satisfy Fed. R. Civ. P. 26(a)(2)(B).

**B.     Sarmadi failed to disclose the basis and reasons for his proffered opinions.**

Even if Sarmadi had prepared the report, which he did not, he nonetheless failed to disclose the basis and reasons for his proffered opinions, in violation of Fed. R. Civ. P. 26(a)(2)(B)(i). "Expert reports must not be sketchy, vague or preliminary in nature. Expert reports must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Brosville Cmty. Fire Dep't, Inc. v. Navistar, Inc.*, No. 4:14CV9, 2014 WL 7180791, at *3 (W.D. Va. Dec. 16, 2014) (internal ellipsis omitted); *see also Jackson v. Mill*, No. 96CV3751, 1997 WL 701314, at *1 (E.D. Pa. Nov. 4, 1997) ("To satisfy Fed. R. Civ. P. 26(a)(2)(B) the report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them.").

Here, Sarmadi failed to include any of the "how" and "why" of the conclusory amounts set forth in the Detail of Fenton Inn. The report itself contains no explanation of how these amounts were calculated, and the calculations themselves are omitted. *See generally* **Ex. 2**. Moreover, both Sarmadi and Pitts conceded that the methodologies used to reach their conclusions about the various line item amounts are not disclosed in the report.

7

For instance, Sarmadi testified that he performed aerial analysis using Google Earth imagery software. *See* **Ex. 3** at 140:6-141:1. However, he admitted that his methodology is not part of the report. *See id.* at 141:2-4 ("Q. Is any of that methodology explained in your report? A. No."). Sarmadi also testified that he took representative wall measurements to obtain the vertical dimensions used in the calculations. *See id.* at 150:10-17. But when asked whether that analysis was disclosed, he responded: "Just broadly. We didn't go into a specific means and methods." *Id.* at 150:18-21. Sarmadi further testified that he independently verified several of the line item amounts by comparing them to a "Tru by Hilton" project on which he worked in 2017. *See id.* at 172:2-184:10. Again, however, he omitted that methodology from the report. *See id.* at 181:10-14 ("Q. Does your report set forth at all your process of verifying each one of these line items against your Tru by Hilton project? A. No. We consider most of that just an internal process.").

Additionally, Pitts identified numerous components of his methodology that are not identified anywhere in the report. For example, Pitts testified that the first step in the process was uploading the original sketches of the Fenton Inn into the On-Screen Takeoff software to produce the four drawings included in the report. *See* **Ex. 4** at 42:6-16; 44:4-13. However, the report fails to mention the On-Screen Takeoff software, let alone how it worked or that it produced the four drawings. *See generally* **Ex. 2**. The software also produced the Fenton Inn Take-Off page, which Pitts explained was important to show that he "actually quantified every component that's quantifiable on the documents." **Ex. 4** at 21:16-22:3. By contrast, Sarmadi testified that "this was clearly a mistake on my part to include [the Fenton Inn Take-Off page] in the packet." *See* **Ex. 3** at 98:8-9. Next, Pitts input the takeoff information into his proprietary spreadsheet software. *See* **Ex. 4** at 41:20-42:1. Again, however, this is not mentioned anywhere in the report. *See generally* **Ex. 2**. Finally, Pitts called supply houses and checked his proprietary database to obtain his unit

prices. *See* **Ex. 4** at 66:11-67:3. Once more, the report includes no reference to this critical step in the process. *See generally* **Ex. 2**.

At bottom, the amounts enumerated in the cost estimate are "mere conclusions with no reasoning." *Osterhouse v. Grover*, No. 3:04CV93, 2006 WL 2051301, at *3 (S.D. Ill. July 20, 2006). Although Sarmadi listed over 200 unit prices, he failed to explain, identify, or disclose any of the processes or methods utilized in reaching his conclusory amounts. Consequently, Sarmadi's proffered opinions "are not supported by the required basis and reasons." *Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005).

### C. Sarmadi failed to disclose the facts and data on which he relied.

Finally, Sarmadi's report is inadequate under Fed. R. Civ. P. 26(a)(2)(B)(ii), because he failed to disclose the "facts or data" that he and Pitts considered in forming the opinions. "[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes to 2010 amendments. This Court has explained that the disclosure requirement applies to any information that a testifying expert "generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Collier v. Land & Sea Rest. Co.*, No. 7:13CV104, 2015 WL 13705013, at *2 (W.D. Va. Sept. 18, 2015).

Here, there is no dispute that Sarmadi's report fails to include the facts and data that he and Pitts considered. Pitts answered this question directly during his deposition: "Q. So is it fair to say that we do not see the majority of the underlying facts [and] data? A. Oh, absolutely, absolutely,

9

you don't, yeah." **Ex. 4** at 70:15-18. Sarmadi confirmed the same: "There are line items—there are a lot more line items in our estimating software than what shows up on these reports. Essentially, the—these reports, if we were to show all of the line items—it would be probably ten times as thick." **Ex. 3** at 92:21-93:3.

Sarmadi also testified that the measurements he purportedly took during his site visit are not included in the report. *See id.* at 50:9-13 ("Q. And do you have your records from your measurements that you took? A. Yes, we do. Q. Are those included in this report? A. No."); 86:9-14 (explaining that the drawings included in the report "are not the extent of the drawings that we were given or used, nor were they the extent of the site sketches that we had and the dimensions that we took"); *see also Providence Piers, LLC v. SMM New England, Inc.*, No. 12-532, 2014 WL 5775663, at *3 (D.R.I. Nov. 6, 2014) ("To the extent that any measurements were taken or tests conducted during these site inspections, both the fact that they occurred and the results need to be disclosed."). Likewise, Sarmadi confirmed that his alleged sketches depicting discrepancies between the original drawings and the as-built Fenton Inn were not disclosed. *See* **Ex. 3**. at 40:6-7 ("Q. Are those sketches included in your report? A. No."). Sarmadi further testified that he failed to disclose the aerial photographs that he purportedly used to confirm the accuracy of his sketches. *See id.* at 58:20-22 ("Q. Are those aerial photographs included in this report? A. No."); *see also id.* at 76:16 (testifying that he took "hundreds of photographs" during the site visit). Finally, the report does not include the "Tru by Hilton" data on which Sarmadi says he relied to verify Pitts's work. *See generally* **Ex. 2**.

Indeed, the *only* facts and data disclosed in the report are the four drawings, which fail to include even the most basic information. *See* **Ex. 3** at 86:3-8 ("Q. Do any of these four drawings contain any exterior elevations? A. No. Q. Do any of these drawings contain any vertical

10

dimensions? A. No."). Sarmadi candidly testified that "very few line items on here are a direct translation from the drawing." *Id.* at 148:3-4. Further, the report does not include any of the cost data that Pitts collected from suppliers or reviewed in his database. *See generally* **Ex. 2**; *see also* **Ex. 4** at 69:12-17 ("Q. Did you ever give Mr. Sarmadi access to the database? A. No."). In fact, the report fails to even identify a single one of these suppliers. *See generally* **Ex. 2**. Therefore, "[b]y failing to disclose the facts or data that [Sarmadi] considered in forming [his] opinions, [Fenton Holdings] did not comply with Rule 26(a)(2)(B)(ii)." *Klein v. Fed. Ins. Co.*, No. 7:03CV102, et al., 2014 WL 6885973, at *3 (N.D. Tex. Dec. 8, 2014).

## II.     Sarmadi's Opinions Are Inadmissible Under Fed. R. Evid. 702.

Under Fed. R. Evid. 702, Sarmadi's opinion testimony is inadmissible unless, among other things, it "is based on sufficient facts or data" and "is the product of reliable principles and methods." This rule requires trial judges, as gatekeepers, to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The same standard applies to the opinions of non-scientific experts. *See Kumho Tire Co. v. Carmichael, Ltd.*, 526 U.S. 137, 149 (1999). "The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

### A.     Sarmadi's opinions are not based on sufficient facts or data.

Sarmadi's opinions are inadmissible because critical facts and data are missing from his analysis. As discussed, the only facts and data shown in the report are the four drawings. As Forella opined, however, the report's drawings are woefully insufficient: "Essential information is missing. For example, we have seen no exterior elevations or vertical dimensional information. The basis of the geometric quantities involving the vertical dimensions are unknown. There are no construction document grade wall sections, details or specifications." **Ex. 5** at 2. At deposition,

Sarmadi corroborated Forella's opinions. *See* **Ex. 3** at 73:5-7 ("Q. Are there any wall section technical drawings included in your report? A. No."); 86:3-8 ("Q. Do any of these four drawings contain any exterior elevations? A. No. Q. Do any of these drawings contain any vertical dimensions? A. No."); 148:17-20 ("The drawings that are attached to this are plan view only. The—that would be linear measurements and area. Floor area is basically all we can get from this."). This leads to the straightforward conclusion that Sarmadi "failed to provide sufficient facts or data upon which the district court [can] conclude that his opinion was based on reliable principles and methods." *Zuckerman v. Wal-Mart Stores E., LP*, 611 F. App'x 138, 138 (4th Cir. 2015) (unpublished) (per curiam).

B. **Sarmadi's opinions are not the product of reliable principles and methods.**

Sarmadi's opinions lack the reliability required by Fed. R. Evid. 702 because they are not the product of reliable principles and methods. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, there is too great an analytical gap between the drawings and the line item quantities for Sarmadi's corresponding opinions to be reliable. Indeed, Sarmadi conceded precisely this point. *See* **Ex. 3** at 148:3-4 ("[V]ery few line items on here are a direct translation from the drawing."). A review of the line item quantities confirms that they are not discernible from the drawings. Take, for example, the "Heavy Individual Stacked Stone/Concrete Wall" with a quantity of 1,200 square feet. *See* **Ex. 2**, Detail of Fenton Inn at 2 of 9. There is no way of deducing this quantity using the drawings, which depict a "Heavy Conc Stone Wall" of 82 linear

12

feet. *See id.* at Site Areas of Disturbance. In fact, Sarmadi himself was unable to explain how the 1,200 square feet quantity was calculated. *See* **Ex. 3** at 68:10-12 ("I could deconstruct the number and give you some approximate values, but I don't know offhand."). This inability to "deconstruct" the line item quantities using the numbers from the drawings applies to nearly all of the quantities within the cost estimate. Thus, "there are too many missing variables to permit [Sarmadi] to give his opinion as to the [unit quantities]." *Ferguson v. Nat'l Freight, Inc.*, No. 7:14CV702, 2016 WL 1192702, at *4 (W.D. Va. Mar. 22, 2016).

Similarly, the unit costs identified for each line item are not the product of any reliable principles and methods, but instead amount to nothing more than Sarmadi's *ipse dixit*. Sarmadi simply input an arbitrary unit cost for each line item. His report contains literally no explanation as to how these amounts were determined. Accordingly, Sarmadi's unit costs fail to satisfy Fed. R. Evid. 702's "requirement that the expert opinion evidence be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001) (unpublished) (per curiam).

## CONCLUSION

For the reasons discussed, the Court should grant Atlantic's Motion and exclude Sarmadi's proffered opinions and testimony.

Dated: April 10, 2019

Respectfully submitted,
**ATLANTIC COAST PIPELINE, LLC**
By Counsel

/s/ Brooks H. Spears
Richard D. Holzheimer, Jr. (VSB No. 40803)
M. Melissa Glassman (VSB No. 27526)
John D. Wilburn (VSB No. 41141)
N. Patrick Lee (VSB No. 78735)
Brooks H. Spears (VSB No. 86391)
James J. Holt (VSB No. 78601)
Keith J. Minson (VSB No. 89417)

MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
rholzheimer@mcguirewoods.com
mglassman@mcguirewoods.com
jwilburn@mcguirewoods.com
plee@mcguirewoods.com
bspears@mcguirewoods.com
jholt@mcguirewoods.com
kminson@mcguirewoods.com

Godfrey T. Pinn, Jr. (VSB No. 43106)
Franklin D. McFadden, Jr. (VSB No. 84187)
HARRELL & CHAMBLISS LLP
707 East Main Street, Suite 100
Richmond, VA 23219
Phone: (804) 643-8401
Fax: (804) 648-2702
gpinn@hclawfirm.com
fmcfadden@hclawfirm.com

*Counsel for Atlantic Coast Pipeline, LLC*

## **CERTIFICATE OF SERVICE**

I certify that, on April 10, 2019, I caused a copy of the foregoing document to be filed on CM/ECF, which will send notice to the following counsel of record:

Brian Gerard Kunze
WALDO & LYLE, P.C.
301 W. Freemason Street
Norfolk, VA 23510
Phone: (757) 622-5812
Fax: (757) 622-5815
bgk@waldoandlyle.com

*Counsel for Defendants*

/s/ Brooks H. Spears
Brooks H. Spears (VSB No. 86391)