```
 1                UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF VIRGINIA
 2                  Charlottesville Division

 3   ATLANTIC COAST PIPELINE, LLC.,      Civil No. 3:18cv00006

 4                Plaintiffs,

 5           vs.                        Charlottesville, Virginia

 6   0.07 ACRES, MORE OR LESS,
     In NELSON COUNTY, VIRGINIA,
 7   LOCATED ON PARCEL IDENTIFICATION
     NO. 19-3-2A, and
 8   FENTON FAMILY HOLDINGS, LLC.
                                         1:50 p.m.
 9                Defendant.             June 19, 2019

10

                  TRANSCRIPT OF MOTIONS HEARING
11           BEFORE THE HONORABLE NORMAN K. MOON
                UNITED STATES SENIOR DISTRICT JUDGE
12
     APPEARANCES:
13
     For the Plaintiffs:          RICHARD HOLZHEIMER
14                                KANG HE
                                  McGuireWoods LLP
15                                1750 Tysons Blvd., Suite 1800
                                  Tysons Corner, VA 22102
16
     For the Defendants:          BRIAN GERARD KUNZE
17                                BLAKE WILLIS
                                  Waldo & Lyle, P.C.
18                                301 W. Freemason Street
                                  Norfolk, VA 23510
19
     Court Reporter:              Sonia Ferris, RPR, OCR
20                                U.S. Court Reporter
                                  116 N. Main St.  Room 314
21                                Harrisonburg, VA 22802
                                  540.434.3181.  Ext. 7
22

23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer.
```

1          THE COURT:  Good afternoon.  We'll start going

2    through some of these motions.

3          We'll start with the plaintiff then.

4          MR. HOLZHEIMER:  Thank you, Your Honor.  Rick

5    Holzheimer on behalf of Atlantic Coast Pipeline.  I also have

6    with me Mr. Kang He.

7          I'd like to start with the motion in limine to

8    exclude Mr. Fenton's opinions regarding the valuation of the

9    property.

10          Your Honor, on the last day of discovery, the Fenton

11    Inn supplemented their discovery responses to identify

12    Mr. Fenton as testifying as to the value of $6.3 million,

13    approximately, for the value of the property.  This is the

14    first time they had supplemented and identified him as

15    testifying as to value, and in that they had made up -- they

16    identified the various attributes that made up the

17    $6.3 million, including $3.1 million, approximately, to

18    reconstruct the inn; $200,000 to reconstruct the cabin;

19    $780,000 to do site work; $414 million dollars -- thousand

20    dollars, approximately, for designer and architect fees; and

21    then a million dollars in potential for the property -- or

22    "future potential" was how it was identified.  Your Honor,

23    we're asking that the Court strike this and we move in limine

24    the Court bar the entry of this information before the jury

25    for numerous reasons.  First and foremost, Your Honor, we had

 1   originally taken the deposition of the landowner entity,

 2   Fenton Family Holdings, and we noticed a 30(b)(6) and

 3   identified Interrogatories asking if the entity was going to

 4   have anyone testifying as to the value, and in their

 5   interrogatory responses, they only identified their expert,

 6   Mr. Ray, and did not identify any other opinions at that

 7   time.  We took Mr. Fenton's deposition.  He was identified as

 8   a corporate designee, and identified specifically in those

 9   categories for any and all information regarding the value of

10   the property, damages, and the various estimates.  At that

11   time, Mr. Fenton testified that he had, quote -- not quote --

12   but in summary, on 161 of his deposition -- he said he had no

13   opinions that were separate from their expert, Mr. Ray.

14        Your Honor, in relying on that, we have prepared the

15   case and we have acted accordingly.  Here on the last day of

16   discovery, the entity identified and supplemented that

17   Mr. Fenton was, for the first time, actually identifying and

18   testifying as to those.  Your Honor, we believe the Court

19   should strike that.  First and foremost, procedurally, and

20   under the discovery rules, and as bound by the 30(b)(6)

21   deposition that we took, timely, well before the close of

22   discovery, they did not identify and at that time -- any

23   opinions by him.  At that time, he was the 30(b)(6) corporate

24   designee, who had an obligation to be prepared to testify

25   fully as to all of the facts and opinions that were noted in

1  the 30(b)(6) categories, and those categories specifically

2  included the fair market value of the property, improvements,

3  value for the easements, value for the residue, and any

4  damages.  At that time, he said he did not have any opinions,

5  and we're relying on what Mr. Ray's opinions would be as

6  their expert appraiser.

7        Your Honor, supplementing something on the last day

8  of discovery after the deposition -- months after the

9  deposition -- we do not believe is fair, timely, and a

10  reasonable supplement, and we believe the Court should bar

11  that.

12        THE COURT:  Under the rules, is it timely?

13        MR. HOLZHEIMER:  We would argue it is not, Your

14  Honor.  Under the rules, to the extent they did decide they

15  wanted to do it, they had an obligation to do it reasonably

16  and seasonably.  The last day of discovery when we don't have

17  the ability to take his deposition, after we've already taken

18  his deposition -- the corporate designee was identified on

19  those topics -- and on the last day of discovery, they drop

20  that on us with a significantly larger number -- larger than

21  even their own expert at $6.3 million -- we do not believe

22  it's timely.

23        Then, Your Honor, getting into the specific opinions,

24  we believe that the Court should still also bar --

25        THE COURT:  Let me ask you this.  What's the law?  Is

that discretionary with the court or does the law permit
excluding that?

        MR. HOLZHEIMER:  We believe the law required them to
seasonably supplement also, but we think under no definition
is the last day of the discovery seasonably supplementing.
We think months after --

        THE COURT:  It's difficult when you say "you
believe," because I can't cite you to the Fourth Circuit.  I
mean, is it the law or not?

        MR. HOLZHEIMER:  Ultimately, it's a discovery
dispute, Your Honor, and would be discretionary for the
court, and it's up to the court, in its discretion, as it
would be in a discovery dispute.

        Moving out from the discovery and what we believe
would be the Court's discretion, getting into the actual
opinions, Your Honor, we believe the Court would also need to
strike them for substantive reasons.  In effect, Mr. Fenton
is a lay witness, and in condemnation actions, lay witnesses
are allowed to testify as to their understanding as to the
value of the property.  But that's subject to two things.
One, that it was disclosed in discovery, which it was not,
and that's up to the Court's discretion; and two, that is
just a lay opinion.  They're attempting to use Mr. Fenton to
back-door an expert opinion through him.  He's not going to
get up there and testify as a witness on behalf of the

1   landowner as to its understanding of the value.  In the

2   supplemental Interrogatory, he's going to get up there and

3   testify and wants to testify how the inn would be

4   reconstructed, all the various costs to reconstruct it, and

5   he's also talked about the values of the materials.  In order

6   to come up with his opinion, he said that he's called around

7   and talked to various suppliers, got estimates as to how much

8   are the supplies.  In essence, Your Honor, he did what their

9   expert, Mr. Sarmadi, did, and the Fenton Inn is trying to

10  back-door expert testimony through Mr. Fenton.  This is not

11  lay witness testimony as to value.  This is expert testimony

12  that was not identified, and this, Your Honor, we don't

13  believe would be in dispute, and we don't believe is

14  discretionary.  They had an obligation to identify expert

15  testimony in accordance with this Court's scheduling order.

16  This is expert testimony.  He's not testifying as to his

17  belief as to the land value.  He's testifying as to what it

18  would cost to reconstruct, what the materials cost, based on

19  hearsay testimony for calling around to various suppliers,

20  calling around to people as to how to build this property.

21  This, Your Honor, is purely expert testimony and it is being

22  hidden under the cover of lay witness testimony.

23          Your Honor, getting into the components of it, I

24  noted for the Court that one of the components was $1 million

25  in future potential.  This is part of the $6.3 million that

1   he purports to want to testify before the jury.  Your Honor,

2   we believe that the Court would need to strike any discussion

3   about $1 million in future potential because in this

4   condemnation, future potential is not at issue.  What is at

5   issue is the fair market value.  It is the fair market value

6   on the date of take.  Mr. Fenton wants to testify about,

7   Well, while the property is only worth $5.3 million -- which

8   is in line with Mr. Ray -- he wants to add an additional

9   million dollars to the value of the property based on,

10  quote/unquote, its future potential.  Your Honor, for

11  condemnation purposes, future potential is not compensable.

12  What is compensable is the value on the date of take.  Any

13  discussion or testimony from Mr. Fenton about its future

14  potential or the value in the future is speculative, is not

15  allowed in the condemnation, and it would be highly

16  prejudicial for the jury to hear this when the only issue

17  before them is the fair market value on the date of take.

18          Again, getting into where this testimony comes from,

19  Mr. Fenton, as a fact witness, has said, Look, he has helped

20  build this property by his hands.  He's built it and he, as

21  we've gone through the testimony -- it's cost about a million

22  dollars at the time.  But now he wants to get up before the

23  jury and say, Well, I built it three years ago.  At the time

24  of the fair market value on the date of take, the cost to

25  rebuild it went from $1 million to $3 million.  For all the

1    reasons we got into why that would be speculative testimony

2    for the experts, it is highly improper and would be

3    additional speculative testimony for Mr. Fenton to testify

4    about that.  Additionally, he was not identified as an expert

5    and the attempt to, again, shoehorn expert testimony through

6    him as a lay witness, we believe is improper.

7           Additionally, as I discussed earlier, Mr. Fenton's

8    testimony on these opinions are based upon hearsay.  While

9    the experts can testify about their opinions based on

10   hearsay, Mr. Fenton cannot.  He said, well, to determine the

11   $3 million and to come up with the $6.3 million valuation, he

12   called around, talked to building suppliers, talked to other

13   people, and valued the property based upon his discussions

14   with them.  Again, Your Honor, this is hearsay testimony.  It

15   would be highly speculative and improper for that to come in

16   for an expert, and it's directly improper for Mr. Fenton to

17   testify about that.

18          Would the Court like us to go one motion at a time?

19          THE COURT:  Let's hear from the defendant.

20          MR. KUNZE:  Thank you, Your Honor.  May it please the

21   Court, Brian Kunze here for Fenton Family Holdings, LLC.  I

22   also have with me my associate, Blake Willis, and Mr. and

23   Mrs. Fenton and their daughter.

24          I think to clarify Mr. Holzheimer's first argument

25   regarding timing of the disclosure, as Mr. Holzheimer said,

1   it was provided completely within the boundaries of the

2   discovery cutoff.  What Mr. Holzheimer failed to inform the

3   Court was that not only did ACP depose Mr. Fenton in January,

4   but they also deposed him on April 9th, about two weeks after

5   the information was disclosed to ACP regarding Mr. Fenton's

6   opinion of value.  So they had the opportunity to depose him.

7   We also at that time on the last day of discovery disclosed

8   additional photographs that were found in their records of

9   the property.  They took the opportunity at that deposition

10  on April 9th to ask Mr. Fenton extensive questions about

11  those photographs, but for whatever reason, chose not to get

12  into the valuation opinion that Mr. Fenton provided.  So any

13  claim that they had no opportunity to respond or to ask

14  Mr. Fenton questions about that is completely untrue as they

15  deposed him two weeks after that information was sent.

16          Then with regard to the nature of Mr. Fenton's

17  testimony, Your Honor, we disagree with Mr. Holzheimer's

18  contention that Mr. Fenton is a lay witness.  The courts have

19  routinely held -- and we cited those in our brief, but I will

20  give the cites that -- we've cited United States v. 68.94

21  Acres of Land, which is a 1990 Third Circuit case, which

22  talks about the Federal Rules of Evidence generally

23  permitting landowners to give opinion evidence as to the

24  value of their land due to the special knowledge of property

25  which is presumed to arise out of ownership.  What that means

and what the courts have held over the years is that owner testimony is really a hybrid of 701 and 702. It's not just a lay witness. It's not an expert witness, but based on their specialized knowledge, they can provide opinion testimony based on the value of the property. That's exactly what we have here. I think Mr. Fenton is the exact type of owner that these rules contemplate. He is a master carpenter and designer. He built that property by himself with his bare hands, harvested the materials from the property, hand-carved many of the features. Did all that. So he does have that specialized knowledge the Third Circuit recognized and is capable and competent to testify and give opinions on the value.

We also cited to a Tenth Circuit case, United States v. 10,031.98 Acres of Land --

THE COURT: I don't think the -- the question is -- just respond to what he argued.

MR. KUNZE: I think the law is clear. Mr. Holzheimer's argument that --

THE COURT: What about the potential?

MR. KUNZE: The potential? Certainly, Your Honor.

We cited to several cases that talk about it's not only the value of the property on the date of take that's highest and best use. For any use that is reasonably probable in the future, so the highest and best use aspect --

1        THE COURT:  What's the highest and best in the future

2   going to be?

3        MR. KUNZE:  It's going to be that they have plans to

4   develop a wine-tasting room, do weddings, potentially a

5   restaurant, and things like that.  That's the highest and

6   best use of the property, and that's what Mr. Fenton based

7   his knowledge -- as the owner based his valuation of the

8   property on.  There's a litany of cases that talk about not

9   just the current use of the property, but the highest and

10  best use so long as it's not remote and speculative.  That's

11  what Mr. Fenton based his valuation on.  Based on the case

12  law, it's not just what's currently going on on the property,

13  but its highest and best use for any use in the future.

14       I might address the hearsay one quickly, too, Your

15  Honor.  We cited to this in our brief as well, but it's been

16  recognized by the courts as well that owners enjoy the same

17  privileges as experts do as well and are able to testify to

18  hearsay as long as they have that specialized knowledge as

19  well.

20       THE COURT:  Okay.

21       MR. HOLZHEIMER:  Your Honor, with respect to the

22  deposition that occurred on April 9th, we did do a deposition

23  of Mr. Fenton after the close of discovery, but, Your Honor,

24  that was a specific deposition, which was actually a

25  discovery sanction for the production of materials that we

had to get from them.  They had objected.  We had to go to

court and, ultimately, the judge did require them to produce

it.  Because it was being produced after the 30(b)(6)

deposition, the Court also authorized us to take the

deposition -- to reopen his deposition on limited topics.

Your Honor, based on those limited topics, we did issue

another 30(b)(6), and the limited topics that we were allowed

to do by the Court's order was three, which was, to the

extent applicable, your answers to interrogatories, your

responses and requests for production, and any documents

produced in response to the Court's order dated February 28,

2019.  The first topic was very narrow.

          Second topic:  Fenton Inn's hazard insurance policy.

Again, very narrow.

          Third topic:  Receipts pertaining to the receipts of

the Fenton Inn.  Very narrow because they didn't produce the

receipts previously so the Court authorized us to ask them

questions about what the receipts were.  So while we did have

an opportunity to depose him after the fact, they fought us

and we had to fight to get these three narrow topics.  So we

did do a deposition, Your Honor, but we weren't allowed to

get into anything else.  These were the topics that we were

allowed --

          THE COURT:  Did you ask to get into any of that?

          MR. HOLZHEIMER:  He was not asked any questions

about --

THE COURT:  Did you ask the magistrate judge to allow that questioning?

MR. HOLZHEIMER:  The magistrate judge's order was in February.  It was before the last minute supplement.  So it was not before the magistrate judge.  It occurred a month later.

THE COURT:  Okay.

MR. HOLZHEIMER:  So, Your Honor, we don't believe that the fact there was a subsequent deposition changes the unfairness and the prejudices that we have received by that supplement.

Additionally, Your Honor, getting into the testimony about whether he's going to have a winery, a tasting and weddings -- these are all speculative.  No experts -- Mr. Ray or our expert, Mr. Harvey -- have ever testified the highest and best use will include a winery or wedding venue or anything like that.  What it is zoned for is a bed and breakfast, but they don't even meet that.  It's a transient lodging facility.

Your Honor, this actually may touch upon something we get to that was identified in our pretrial submissions by both parties.  One of the issues we believe the Court is going to need to take up before the jury is who gets to decide all of these issues?  As we have noted in our brief,

the addendum that is attached to the pretrial, it is our

position, and we believe the case law is absolutely clear,

including U.S. v. Reynolds in the Seventh Circuit, the only

person who is going to decide any issues other than

compensation is the Court.  The jury can only decide one

issue, which is just compensation.  All other factual issues

and all other facts would be for the trial judge.  We can get

to that because we address that specifically later.  But for

them to argue now that, Well, the highest and best use is now

a winery with wine tastings, and all these other things, Your

Honor -- this is just asking the jury to speculate and asking

the jury to make factual findings that are not within their

purview.  We'll get to that later, but we do not believe,

Your Honor, that it is appropriate for the jury, and the case

law is clear the jury cannot consider that.  The only issue

they're to consider is the value of what is presented and

this Court would decide all other issues and then present

that to the jury to decide.  So to the extent we need to get

into highest and best use, larger parcel, all that stuff, we

believe that's only appropriate for this Court -- the

judge -- to rule upon.

       THE COURT:  All right.

       Is that all on that issue?

       MR. HOLZHEIMER:  On that issue, yes.

       THE COURT:  Okay.

1        I will not allow him to testify as to potential.  I

2   think that's out of the question, but I will allow him to

3   testify as to value.  I don't think he's different -- even if

4   he's an expert, he's no different as to any owner of

5   property.  An expert that owns property can testify as to the

6   value before and after but not to any potential.  I think

7   that's in the realm of expert testimony and sort of changing

8   the highest and best use at this point.  It's too late to

9   bring that up.

10       MR. HOLZHEIMER:  Would the Court be open to allow us

11  to do some discovery on him at this time?

12       THE COURT:  Allow what?

13       MR. HOLZHEIMER:  Allow us to do his deposition on

14  those new opinions?

15       THE COURT:  You don't have much time, do you?

16       MR. HOLZHEIMER:  We don't, Your Honor, but I would

17  rather know than not know ahead of trial.  It was produced on

18  the last day of discovery.  We didn't have a chance and it

19  was after the depositions.

20       THE COURT:  What do you say?

21       MR. KUNZE:  Your Honor, again, we provided additional

22  information in discovery.  They asked about certain

23  photographs and things like that --

24       THE COURT:  Why did you wait until the last minute?

25  Seems like this is gamesmanship.

1        MR. KUNZE:  It was not.  Mr. Fenton was putting his

2   valuation together.

3        THE COURT:  Did you tell them he was putting it

4   together?

5        MR. KUNZE:  We had a discussion and they asked me if

6   Mr. Fenton was going to be providing a valuation at some

7   point.  I think it was around January.  I said, At this

8   point, he's not, but if he does, we'll make it available for

9   discovery.

10       THE COURT:  That's misleading, with all due respect.

11       MR. KUNZE:  We did not intend to mislead anybody,

12  Your Honor.  We provided the information.

13       THE COURT:  Okay.  I'm going to exclude his testimony

14  totally.  I think that's a problem.

15       What's next?

16       MR. HOLZHEIMER:  Your Honor, the next issue would be

17  with respect to any evidence of sound, vibration, and light.

18       This does -- is a continuation a little bit of the

19  issue --

20       THE COURT:  I don't know whether y'all saw it or not,

21  but I published an order concerning the matters beforehand

22  and -- that we heard before.  Have you all seen that?

23       MR. HOLZHEIMER:  We have not.

24       THE COURT:  I'll tell you right now -- I'll just tell

25  you.

1    The order with regard to plaintiff's motion to

2  exclude Sarmadi is denied.  Plaintiff's motion to exclude

3  opinions and testimony of Paradis is granted.  Plaintiff's

4  motion to exclude the testimony of Ray is granted in part to

5  the extent his testimony and opinions are based on valuation

6  of the water and septic system on the subject property, and

7  denied in part in all other respects.  Plaintiff's motion to

8  exclude the opinions and testimony of Stokes is granted.

9    MR. HOLZHEIMER:  If I may take a minute to look

10  through our motions in limine and see how that affects that?

11    THE COURT:  Do you want me to read that again?

12    MR. HOLZHEIMER:  That would be helpful, yes.

13    THE COURT:  Can we just give them a copy?

14    THE CLERK:  Do you want me to print a copy?  I just

15  got it right when I came to the courtroom.

16    MR. HOLZHEIMER:  Your Honor, looking at our motion in

17  limine in light of the Court's order, I think it would

18  address the sound and vibration portion of our motions in

19  limine because those would relate to Paradis.

20    THE COURT:  I think it does.

21    MR. HOLZHEIMER:  The only thing I would raise that

22  were in the motions in limine, there's an additional report

23  in there that they had suggested they may try to get in.

24  Just like there was the sound study that was attached, there

25  was also a light study that was attached, and for the reasons

1  we think the Court ruled to keep out Paradis, we believe the

2  light study would also need to be removed.

3          MR. KUNZE:  I think, Your Honor, based on the Court's

4  ruling, that would probably take care of that issue as well,

5  too.

6          THE COURT:  Okay.

7          MR. HOLZHEIMER:  Then, Your Honor, that would take

8  care of one motion in limine -- or two.

9          Another motion in limine, Your Honor, was with

10  respect to explosions, blasts, ruptures, incidents, and

11  testimony about fear of pipeline explosions.  Your Honor, I

12  think for the same reason the Court has ruled and excluded

13  Mr. Stokes --

14          THE COURT:  I think Ray can talk about people don't

15  like to be near a pipeline.  I mean -- pipelines.  But as far

16  as -- I think Stokes' testimony is not specific to this

17  property.  It's just too speculative.  But he can -- no one

18  in particular wants to be living near a pipeline, I think.

19          MR. HOLZHEIMER:  We understand.

20          Mr. Ray's testimony, we believe, doesn't get into

21  that because he does reference Mr. Stokes on the explosions,

22  but Mr. Ray said his opinion was only based on his paired

23  sale, which was -- that's important in his belief that people

24  just don't want to be near it, but it had nothing to do with

25  any particular reason, nor has he found any particular reason

1  other than he believed people would not want to buy it.  We

2  believe the Court would then rule similarly on the motion in

3  limine on that.

4      THE COURT:  All right.

5      MR. HOLZHEIMER:  Finally, Your Honor, the last motion

6  in limine from plaintiff is regarding income, revenue, and

7  profits, Your Honor.

8      There's been no claim in this case regarding lost

9  profits so we believe it would be highly prejudicial and

10  improper for Fenton Inn and Mr. Fenton to bring up lost

11  profits or concerns or claims for damages relating to income,

12  revenue or lost profits.  To the extent, obviously, this

13  information is necessary for the experts, they can use that,

14  but we don't believe that Mr. Fenton or any of the landowners

15  should be able to get up there and claim to the jury that

16  they've been damaged and have lost profits when they've not

17  identified any as any of their damages.

18      THE COURT:  Is there any change on lost profits?

19      MR. KUNZE:  Your Honor, I was a little unclear as to

20  what they were seeking in their motion, but we have no intent

21  to put Mr. Fenton on to talk about income.

22      MR. HOLZHEIMER:  Those would be our motions in

23  limine.

24      THE COURT:  All right, sir.

25      MR. KUNZE:  Would you like me to proceed, Your Honor?

1          THE COURT:  Yes.

2          MR. KUNZE:  We have essentially three motions.  I'll

3     start with our motion regarding a view of the property, Your

4     Honor.

5          We've made a motion to have the jury take a view of

6     the property and --

7          THE COURT:  There's no issue about that, is there?

8          Did you oppose that?

9          MR. HOLZHEIMER:  We did, Your Honor.  In state

10    condemnations, I would agree with Mr. Kunze that it is

11    required by statute.  But -- I don't mean to take over.

12         THE COURT:  That's all right.  I just wanted to cut

13    it short.  We try these cases pretty much the way the state

14    court does.

15         MR. KUNZE:  If you'd like me to address that, Your

16    Honor, I'm happy to.

17         THE COURT:  Yes; then I'll hear from him.

18         MR. KUNZE:  The way the law is generally is that the

19    procedures are done in accordance with the state procedures

20    that the court is sitting.  To the extent, though, 71.1 --

21    Federal Rule of Procedure 71.1 was enacted, the courts have

22    held that that generally supersedes state procedure when

23    there's a conflict between the two.  However, Rule 71.1, the

24    language of the rule itself is silent on the view -- whether

25    there is a view or not.  However, the advisory committee

notes in two specific places recognize the view. Then we've

cited cases -- recent cases -- in 2001, and others as well,

that talk about the view being an independent piece of

evidence that a jury can consider. Then in every other case

we've tried as far as the Patriot Pipeline in the Western

District years ago, we've done views on all of those. So in

this case, there's no superseding of Rule 71.1. So the

courts have routinely held the view is an important piece of

evidence for the jury to consider. There's no precedence I'm

aware of that ACP has cited to the contrary that says views

are not appropriate or anything like that. So we would just

ask for the jury to be able to see the property.

THE COURT: All right.

MR. HOLZHEIMER: Your Honor, as Mr. Kunze said, 71.1

has abrogated the reference in the Natural Gas Act and the

statutes and the rules referring to the state condemnation

procedures. We've cited numerous cases in our brief that say

with the enactment of 71.1 or its predecessor, 71A, that that

is no longer applicable in federal condemnations. So there

is no state procedure requirement under the rules. 71.1 is

very clear and every case that's addressed it says it's

abrogated any deference or use to state court procedures for

condemnations.

THE COURT: It looks like a view would be helpful to

the jury and to me.

1          MR. HOLZHEIMER:  Obviously, that would be within the

2     Court's jurisdiction.

3          THE COURT:  I will order a view.  I think a view is

4     important.

5          MR. HOLZHEIMER:  With respect to the view, then, Your

6     Honor, we believe it would be narrowly focused on the

7     property being condemned.  For any viewing, we would believe

8     what would be an appropriate view would be to view the

9     property being condemned, the permanent easement area as

10    opposed to a larger site visit.  The views we've done --

11         THE COURT:  We're not going to hike the property.

12         MR. HOLZHEIMER:  Exactly.  We wouldn't want to hike

13    the property, but we think the only relevant matter for the

14    jury is the property that's actually being condemned, the

15    permanent easement area.  We don't believe that a long view,

16    walking around --

17         THE COURT:  We'll see about that.  It's hard for me,

18    not knowing what's up there, to say what we'll view.

19         Anything else?

20         MR. KUNZE:  I would just add it's not just the

21    property being condemned.  Both sides' appraisers have found

22    damage to the residue of the property so to understand that,

23    I think it's necessary for the jury to see, at least, the inn

24    constructed on the property, which is right next to the

25    condemned area.  We're not advocating a hike through all

1    20 acres, but the improvements that both sides valued I think

2    is necessary for the jury to see.

3          THE COURT:  Okay.

4          MR. HOLZHEIMER:  And, ultimately, this is within the

5    Court's discretion, but we think one issue that we do think

6    we should not be getting into is the other parcels.  We get

7    into this a little bit on our pretrial addendum and filings.

8          THE COURT:  I know.  We've got to determine -- that's

9    an issue to come up later.

10         MR. HOLZHEIMER:  Yes.

11         THE COURT:  We do need -- excuse me?

12         MR. HOLZHEIMER:  I was just going to say, Your Honor,

13   the unity of land issue may be an issue the Court wants to

14   take up later, but we believe it's an issue that has to be

15   taken up before the jury is seated.

16         THE COURT:  We're going to talk about it a little

17   later, maybe.

18         The logistics of it, though, we'll have to set a van

19   or something to take people on the view.

20         MR. KUNZE:  Yes, Your Honor.

21         One of the comments in the advisory committee's notes

22   to Rule 71.1 is that the cost and everything associated with

23   the view is borne by the condemning party.

24         MR. HOLZHEIMER:  Your Honor, they're asking for the

25   view.

1          THE COURT:  I'm more concerned about who takes the

2   jury out there.  We did this one time before.  It's been so

3   long -- I forgot whether the marshals --

4          THE CLERK:  I think the marshals did it, Your Honor.

5          MR. HOLZHEIMER:  Your Honor, to the extent views have

6   occurred and done a lot in state court -- normally, because

7   we're identifying the jury's valuing a specific area, the

8   permanent area that's being taken, that's what's being

9   valued -- we usually have somebody who's identified that can

10  have it staked and we can have it shown to the jury.

11         THE COURT:  Okay.

12         MR. HOLZHEIMER:  Does the Court logistically think --

13  will we do this next week, on Monday?

14         THE COURT:  I would think it would be good if we

15  could have the view after the opening statements.  We could

16  do it Tuesday morning.  We don't know --

17         MR. HOLZHEIMER:  We'll deal with the Court's clerk on

18  logistics.

19         THE COURT:  I like to have witnesses prepared to go.

20  I usually go from 9:30 to 5.  I want witnesses -- I don't

21  want to stop the case at 4 because a witness is not here.

22         MR. HOLZHEIMER:  We'll be fully prepared on Monday,

23  Your Honor.

24         THE COURT:  You understand.

25         MR. KUNZE:  Yes, Your Honor.

1          THE COURT:  We're going to have to decide, though,

2     before Monday, when the marshal is going to need to be

3     prepared to take the jury.

4          MR. KUNZE:  In every case, we've done it as you've

5     suggested.  We have opening statements and then proceed to

6     the view.  That would be my suggestion.

7          THE COURT:  I don't know how long it will take to

8     pick a jury in this case.  Anyway, we'll get to that later.

9          You want to take up yours?

10         MR. KUNZE:  Thank you, Your Honor.

11         Our next motion in limine, Your Honor, is to exclude

12    any evidence or testimony regarding the tax returns of both

13    the defendant, Fenton Family Holdings, LLC, and a separate

14    LLC, Fenton Inn, LLC, which is a separate LLC that operates

15    the bed and breakfast on the property.

16         Through discovery and the exhibit and witness lists,

17    we've learned that ACP intends to put on evidence of the

18    information and amounts of money reported in tax returns as a

19    basis of trying to prove a value for the property in this

20    case.  As the Court has heard many times over and seen from

21    these motions, the determination of value is based on the

22    market value in this case.  So our motion is to exclude tax

23    returns on the basis the information provided is strictly for

24    tax purposes and is not an indicator of actual market value.

25         THE COURT:  But when you fill out your tax return,

1   you swear that the information in it is true.  Why should

2   your tax return be different from your testimony and you

3   swear here that your testimony is true?  If they're two

4   conflicting statements -- I mean, certainly you're not saying

5   it's all right to lie about your taxes.

6           MR. KUNZE:  I'm not saying it's all right to lie

7   about taxes, Your Honor.  I'm saying people file their taxes

8   in an effort to minimize tax liability, and there are

9   certain --

10          THE COURT:  But still, you've got -- but you can't

11  come into court and say something because you're going to

12  maximize something else.

13          MR. KUNZE:  I don't think that meets the definition

14  of market value, which is what a willing buyer and willing

15  seller will pay.  What a person puts on tax returns and

16  exercises any number of rules and regulations that benefit a

17  taxpayer is not indicative of what actual market value is.

18          THE COURT:  If you put on what your income was and

19  what your gross receipts were and what your expenses were --

20  should be accurate.

21          MR. KUNZE:  But that's not the information that ACP's

22  experts have relied upon.  They've relied upon what the LLC

23  and defendant has put on there for tax purposes and

24  depreciation as well.  Even with depreciation, there are

25  rules that are not indicative of what market value is.  There

1   are certain separate tax values that govern how you

2   depreciate certain items.

3            THE COURT:  I understand it would be different --

4   what a tax assessment might be would be different from your

5   income.

6            MR. KUNZE:  But it's not the income that their expert

7   based -- one of their rebuttal experts looked at the amount,

8   the cost to put on the tax return as that's an admission of

9   value.  It's not an admission of market value.  That's just

10  the raw cost incurred by the owner without certain things

11  like labor, without certain things that their appraiser

12  recognizes are elements of value, too.  So it's really just

13  for tax purposes, to minimize tax liability within the

14  confines of the law.  I'm not suggesting there's any kind of

15  tax fraud or anything like that going on here.  But again, as

16  the courts we've cited have noted, it is not an indicator of

17  market value and that's why courts have excluded that in

18  condemnation cases, especially with regard to the value of

19  real estate.

20           ACP cites to a condemnation case out of the Second

21  Circuit, I believe, Your Honor, which talks about tax returns

22  used for the value of equipment and fixtures.  But in those

23  cases, you're actually reporting the cost you paid for that.

24  That's market value.  The price you paid for equipment and

25  fixtures -- that's a hard cost.  That's what the market value

1    is because you had a willing buyer and seller for those.  But

2    when it comes to real estate, that's not an indicator of

3    market value and that's why the courts have excluded because

4    it's not a willing buyer and seller --

5            THE COURT:  What is the question and what is the

6    answer on the tax return?

7            MR. KUNZE:  It's the value that was put on there for

8    the cost of materials over the years they were being

9    constructed.  It's not even the final value that's been

10   reported.  It's the value over the years when Mr. Fenton is

11   constructing the inn in various stages because it took him

12   several years to do it.  So in 2015, he reported the value of

13   the materials and the state of the construction as one value.

14   Then the next year, it was slightly higher, and then the next

15   year, it was slightly higher than that.  But that's not the

16   market value of the property.  That's not indicative of what

17   the value to a willing buyer would be.

18           THE COURT:  Isn't your witness saying -- he's trying

19   to get to market value by showing the cost of materials.

20           MR. KUNZE:  That's the market cost of the materials

21   and that also includes labor.  That also includes all the

22   type of things that go into constructing it and not just the

23   materials that Mr. Fenton bought four years before the date

24   of take.  That's where the Tenth Circuit has said it's too

25   remote in time to be of any value in coming up with a market

value.  So what Mr. Fenton put on these years before the time

that it was actually constructed is not indicative of what

the market value would be at this time or at the date of

take.

THE COURT:  Is this a rebuttal witness?

MR. KUNZE:  Yes, Your Honor.

I will clarify.  Their appraiser relied on it to some

extent that that was the income generated by the property,

but the rebuttal witness simply looked at the tax returns and

the value reported on those tax returns and used that as an

indicator of the value of the real estate.

THE COURT:  Okay.

MR. KUNZE:  Thank you, Your Honor.

MR. HOLZHEIMER:  Your Honor, the Fentons have an

obligation on their tax returns to identify the fair market

value or actual costs.  They're the ones who want to get

into, Let's build this from scratch -- let's build this inn

from scratch.  And to do that and for us to try and figure

out whether or not their valuation of $3 million, in sum, to

build it from scratch is appropriate for cross-examination

and also for rebuttal -- we've gone through their tax returns

and identified the costs they've identified in their own tax

returns as to what it cost them to build it from scratch --

the cost for materials or fair market value or whatever they

paid for it.  We believe that is directly relevant to their

testimony.  It's directly relevant because, as the Court

remembers, there's multiple ways to value the property;

comparable sales, income approach, and then, kind of,

replacement costs.  Their expert does one thing.  He values

the property based on replacement costs.  To do that, he has

cobbled together all these costs, and despite the fact that

we know that Mr. Fenton spent about a million dollars in

materials, based on his tax returns that he swore to, we

believe that the testimony of Mr. Ray talking about building

the property three years later at the cost of $3 million is

completely inappropriate, and we need this information for

cross-examination.  We need it for rebuttal, and, Your Honor,

we believe it's fair game when their whole testimony on

appraised value is building it from scratch.  So when

Mr. Fenton identified to the IRS what he paid for these

materials, that's a sworn statement from him and that is a

statement as to the value of those materials and we have a

right to use that in this case when they are making the

materials at issue relevant for valuation purposes.

        The Court noted in their briefs -- they cite to a lot

of cases.  There are absolutely cases that talk about tax

assessments, and the cases they cite talk about tax

assessments.  We are not getting anywhere near tax

assessments.  We don't believe that tax assessments are

appropriate, nor are we offering any to the jury.  But what

they have on the tax returns -- sworn statements -- they have

an obligation to be truthful and we believe are relevant and

should be admissible.

THE COURT:  Okay.

Anything?

MR. KUNZE:  Yes, Your Honor.

Again, as I explained before, many of the materials

used in the construction of this inn were not included in the

tax returns because they weren't purchased.  A lot of

materials were purchased by Mr. Fenton from friends or not

paid the market value.  This gets into a trial within a

trial, basically, as to the components of the tax return,

what's included in the tax return, how taxes are filed, and

that's basically -- nothing can come of that but confusing

the jury.  This is about market value --

THE COURT:  But you're talking about the cost of

replacement.

MR. KUNZE:  Yes, Your Honor.

THE COURT:  It seems to me this is a very different

situation than when you're talking about the other methods of

appraising the property.

MR. KUNZE:  Certainly, Your Honor.  It is a separate

type of valuation.  It is based on the cost to reproduce it

on the date of take.  Using tax returns from years prior

filed specifically for tax purposes is not an indicator of

1    what the value of the property was on the date of take.

2         THE COURT:  But you have to be honest on your -- at

3    that.  If it said what is the fair market value, what you

4    paid for it, that's the same there as it is in court.

5         MR. KUNZE:  It's a value for what was purchased and

6    what was done as a result of the construction efforts to

7    date.  It's not the fair market value of the property as a

8    whole.  That's the difference between what's reported on the

9    tax returns.

10        THE COURT:  But that's what your witness is going to

11   say -- I called around and found all these values, found what

12   it would cost to do it, and it's this much material -- and

13   that sort of thing.

14        MR. KUNZE:  As of the date of take, including labor

15   and other soft costs not included in tax returns.  The tax

16   returns don't include the necessary items to accurately do a

17   cost approach.  Both appraisers included soft costs.  Both

18   appraisers included entrepreneurial incentives.  Both

19   appraisers included labor and taxes and things like that.

20   That is not included on tax returns and not required to be.

21        THE COURT:  I think it's proper to use it on

22   rebuttal, and we can give the jury an instruction.  If y'all

23   want to come up with a curative instruction, we'll try to do

24   it, but I don't know why it wouldn't be proper impeachment,

25   and particularly under the facts of this case.

What's next?

MR. KUNZE:  We have one more.

Your Honor, we have a motion in limine to exclude recently identified witnesses, Debbie Harvey, Charles Miller, and Thomas Eick of Nelson County, who are identified on a supplemental exhibit list by Atlantic Coast Pipeline on June 7th -- I'm sorry, June 3rd -- which was approximately six days after the deadline to identify witnesses.

To give you a little background on the basis of this motion, Your Honor, we propounded discovery on Atlantic Coast Pipeline back in August of 2013.  We had Interrogatory No. 2, which asked for the name, address, and identification of any fact witnesses that would be called at trial.  We had Interrogatory No. 4, which asked for the identity of every person with relevant facts known about this matter, and we received only one name in response to those, which is a representative from ACP, David Aman, also identified as a witness on the witness list.  We didn't receive any notification of these potential witnesses until approximately five days after --

THE COURT:  Do you know what these witnesses are testifying to?

MR. KUNZE:  I don't, Your Honor, and that's half the problem.  I have an idea of what I think they're testifying about and that's because we received a supplemental appraisal

1    report from Mr. Harvey, ACP's witness, and he's changed his

2    highest and best use somewhat based on a contested issue of

3    fact, which relies on, without getting into too many of the

4    details, but the number of rooms that could possibly be

5    rented at the inn based on the zoning ordinances, the

6    building permits, and certificates of occupancy.  So there's

7    a contested issue of fact between the two parties on that

8    case.

9         In Mr. Harvey's second appraisal -- he didn't address

10   this in his first one, but in his second appraisal, he's now

11   changed his opinion slightly about how many rooms could be

12   built based on information he received from these three

13   identified people.  He attached some emails from them and

14   some FOIA -- or documents he received from FOIA requests --

15   to the addendum of his report, but ACP never identified these

16   people in their responses to discovery as people with factual

17   knowledge or fact witnesses they intended to call at trial.

18   So they've sent subpoenas on June 7th to these three people

19   subpoenaing them as witnesses but then also directing them to

20   bring certain documents -- not only the documents that were

21   included in the addenda to Mr. Harvey's report but also any

22   other documents they have between their departments and Mr.

23   and Mrs. Fenton, the defendant.  So at that point, they're

24   apparently coming to trial to talk about not only these

25   documents that relate to a material issue of fact but any

documents they have that we haven't been provided and have no idea what they're about.

In addition to that, Your Honor, in their witness list, even when they supplemented, at least, these peoples' names, the pretrial order in this case requires them to disclose the substance of their testimony. That was not provided at all. All we received was their names. At this point, they've given us their names and we know there are these subpoenas to bring documents that we've never seen before, and that's the extent of our knowledge. That's happened less than three weeks before trial. So we have no idea exactly of what the basis of their testimony is. They say it's simply to authenticate records, but we don't know if that's the case or not. And it's about a material issue of fact. If they had identified these people within the discovery deadline pursuant to the discovery deadline we had set, we could perhaps adequately prepare --

THE COURT: You wouldn't take the deposition of someone who's just going to authenticate a record.

MR. KUNZE: Well, I don't know if they're going to authenticate a record or not. They've been directed to bring any number of items that we've never seen before. So to the extent they're going to authenticate a record --

THE COURT: The question is whether anything like that would be admissible.

1      MR. KUNZE:  I don't know what the record is so I

2    don't know.

3      THE COURT:  Let's hear what they've got to say.

4      MR. HOLZHEIMER:  Your Honor, with respect to the

5    identification of them, these are all custodians of records.

6    These are all people for which all we want to do is to

7    authenticate documents, to bring in documents that we've had

8    that we've produced.

9      With respect to Mr. Harvey's supplemental report, Mr.

10   Harvey supplemented his report -- absolutely -- seasonably,

11   timely, and well within discovery.  He did make supplements

12   to his report.  There's nothing nefarious about that.  I

13   don't think there's any concern about that.  But in his

14   report, Mr. Harvey has identified his value based on the

15   property and its use.  We've discovered they do not have a

16   certificate of occupancy.  They don't have permits for a

17   commercial kitchen.  They're raising all these things.  So,

18   Your Honor, these subpoenas are for rebuttal witnesses.

19   These are impeachment witnesses.  I don't think there's any

20   secret.  I'm going to ask Mr. Fenton:  Do you have a

21   certificate of occupancy?  If he says no, then I don't have

22   any need for any of these witnesses.  If he, we believe,

23   would state falsely -- says yes, he has a certificate of

24   occupancy, then these witnesses are to impeach him because no

25   such certificate of occupancy exists.

1      With respect to why they should bring in all

2   documents, we're having to prove a negative.  We can't ask

3   them to please bring a certificate of occupancy because it

4   doesn't exist.  We tried to get certified copies of their

5   files so we wouldn't have to go through this to bring the

6   custodians here, but we've made arrangements that they can be

7   on call and not tie them up for the week.  But Your Honor,

8   this really is an impeachment witness.  This is classic

9   impeachment.  If Mr. Fenton says they have a certificate of

10  occupancy, I have the right to impeach him, and I have the

11  right to bring impeachment witnesses on that, and that goes

12  directly to their running of this inn and their use of the

13  property on the date of take.

14      It's never had a certificate of occupancy from the

15  date they opened it to the date of take to even today.

16  There's no certificate of occupancy here, Your Honor.  They

17  have a preview as to what our impeachment is going to be, but

18  for them to complain, Well, we should have identified them in

19  discovery -- we don't have to identify impeachment witnesses.

20  If he answers truthfully that they don't have a certificate

21  of occupancy, we don't have a need to call them.  If he

22  answers truthfully they don't have a permit for a commercial

23  kitchen -- they talk about weddings and expanding all these

24  things, Your Honor.  None of this is authorized under Nelson

25  County permitting or certificates.  They have six rooms.

1   Their permits specifically say they can only have five rooms,

2   and I need to bring in the custodian of records, who will

3   authenticate those documents to the jury.

4        They've talked about, Well, we're building an

5   additional cabin that will be a pet-friendly addition.  Your

6   Honor, the permits on that parcel -- it's on a different

7   parcel.  It's next to the residence.  And because it's next

8   to the residence, their permit is it's an inlaw suite.  It

9   has nothing to do with the inn.  So Mr. Fenton has this image

10   and this vision of this property, but that is not based on

11   what's based in reality, and our experts are valuing it based

12   on the date of take, based on reality, based on what's

13   reasonably probable.  As it stands, they cannot have more

14   than five rooms.  As it stands, it is a transient lodging

15   where the owner needs to live in the same building as the

16   rooms.  So they've talked about, Oh, there's this innkeeper's

17   residence.  Your Honor, there is no innkeeper residence

18   because under the zoning, the innkeeper has to live in the

19   lodge with the other rooms.

20        So he's talked about what he wanted to build.

21   Remember, Your Honor, they valued $200,000 to build this

22   cabin that is going to be a stand-alone room.  They don't

23   have a permit for more than five rooms.  They already have

24   six.  Then they want to argue to the jury the stand-alone

25   cabin should be valued as well.  The stand-alone cabin is

next to the residence on a different property, and the permit

for it is an inlaw suite.  They can't use it.  So I don't

mean to disclose my rebuttal impeachment case, but if he

testifies truthfully and honestly, we don't need any of these

custodians of record.

THE COURT:  Okay.

MR. KUNZE:  Your Honor, our discovery request simply

asks for people with factual knowledge.  We were not provided

that.  That discovery request has been pending since August

of last year.  The fact they've known about this -- and let

me respond to Mr. Holzheimer's claim that Mr. Harvey's report

was within the discovery deadlines.  We received on --

THE COURT:  He says it's going to be on rebuttal.  He

can rebut your witnesses.

MR. KUNZE:  Certainly, he can, but he also has to

respond to our discovery responses about people with factual

knowledge of the case, people who have information pertaining

to this matter.

THE COURT:  Nobody takes a deposition of people who

just authenticate records.  These people know nothing except

their record, I gather.  That's all they'll be entitled to --

MR. KUNZE:  He's talking about bringing them in for

rebuttal and impeachment purposes to say there's no

certificate of occupancy.

THE COURT:  That's no different than authenticating

1 that there is a record, to say there is no record.  I mean,

2 like you said -- well, it's just admissible.  It's just as

3 rebuttal testimony.  That's the plain --

4   MR. KUNZE:  I'm not arguing, Your Honor, it's not

5 admissible.  I'm arguing regarding the failure to disclose

6 the information.  That's the basis of our motion.

7   THE COURT:  I think it's -- I think it's proper for

8 the Court to allow notwithstanding the fact that it wasn't

9 timely filed because --

10   MR. KUNZE:  Certainly, Your Honor.

11   THE COURT:  Authenticating witnesses, generally, are

12 not treated the same as other fact witnesses.

13   MR. KUNZE:  I don't disagree with that statement,

14 Your Honor.  But the fact is that this has been a material

15 issue of fact that the parties have agreed on for several

16 months.

17   THE COURT:  Does your client know that there is a

18 record there that these people say is not there?

19   MR. KUNZE:  They have correspondence we've now just

20 turned over -- they've just found -- about them talking about

21 having to change certificates of occupancy and having them

22 amended and approved.  They don't have a hard copy of a

23 certificate of occupancy, but we've been able to uncover

24 records.

25   THE COURT:  You can explain his testimony.

1          MR. KUNZE:  Thank you, Your Honor.

2          THE COURT:  Anything else to exclude?

3          MR. KUNZE:  No, Your Honor.

4          THE COURT:  All right.

5          MR. HOLZHEIMER:  I didn't know if the Court wanted to

6    take up any of the issues --

7          THE COURT:  I would like to take up anything we can

8    get out of the way.

9          MR. HOLZHEIMER:  Your Honor, one of the issues that I

10   think both parties have identified in the pretrial submission

11   is the issue of the unity of lands and whether or not that

12   is -- that it is a factual issue.  Both of us agree the unity

13   of lands is a factual issue.  Both of us agree that it is an

14   issue that's obviously vital to this case.  The only

15   disagreement between the parties is who the factfinder is.

16   Your Honor, we believe the law is clear.  U.S. v Reynolds and

17   also the Seventh Circuit has directly addressed this point in

18   U.S. v. 105 Acres.  The only issue that goes to the jury is

19   valuing the property.  The jury has no other factual issues.

20   This Court -- the judge -- is the factfinder on all other

21   factual issues.  Therefore, we believe that this Court, this

22   judge, needs to determine the unity of lands issue as a

23   factual matter before the jury hears evidence.

24         Your Honor, in U.S. v. Reynolds, the Court made it

25   very clear that the judge sitting in a condemnation case

under 71.1 has a broader role than a judge normally does in a regular jury trial. The U.S. Supreme Court specifically said it is for the judge to determine all factual issues. The only thing the jury is to determine is the value of the property. To the extent there are factual issues that lead to that, or any issues that lead to that, the judge needs to determine that ahead of time.

Your Honor, in U.S. v. 105 Acres from the Seventh Circuit, which we cited in our brief, that was exactly this issue before the Seventh Circuit. In that case, the issue is whether or not the parcels needed to be together, unity of land or larger parcel. The Seventh Circuit reversed the district court and said under U.S. v. Reynolds, that had to be determined by the judge --

THE COURT: Is there evidence in the record already the Court can decide that on?

MR. HOLZHEIMER: There is some evidence, but the burden is on them to do it. They have not pushed or presented evidence -- any evidence, we believe. They've made arguments that the unity of land would apply, but as we pointed out, their expert doesn't address it at all. So, actually --

THE COURT: But his appraisal deals with the entire acreage.

MR. HOLZHEIMER: His appraisal deals with the entire

acreage, but it doesn't go through any analysis on this

factual issue.  Our appraiser did, and identified facts as to

why this property should not be determined under unity of

land.  So, Your Honor, the burden is on the landowner.  We,

as the condemnor, have condemned this one parcel.  The

Supreme Court said anything beyond that or any issues, if you

want to bring in these other parcels, that may be allowed if

there's a determination that the larger parcel analysis was

done correctly, with all of the facts.  This Court has not

had any facts before it.  The Court hasn't had any evidence

or anything to make that determination.  Until that

determination is made, the only parcel then is the one that

we have condemned.  The burden is on them to bring that up to

get a determination from the Court, to give the Court facts

to make that.  The Court has no facts as we sit here today.

So without any facts, the Court can't make that

determination.  If they want to present facts, they can do

that and the Court can make that determination, but that has

to occur before the jury is seated -- before the jury hears

any evidence and, Your Honor, they have not presented those

facts.  They have that burden and they have not done that.

The Supreme Court and the Seventh Circuit directly on point

said this court has to have an evidentiary hearing on that.

To the extent they want to do that, they have an obligation

to hold an evidentiary hearing to give the court the evidence

1  necessary to rule on that issue.  They have not.

2          THE COURT:  Yes, sir.

3          MR. KUNZE:  Thank you, Your Honor.

4          We will concede there's a split between the circuits.

5  We cited a Fifth Circuit court that says the exact opposite

6  of what ACP is arguing today, and that is a jury decides

7  that.  There's also a Southern District of California case

8  that says the opposite of that.  It says it is the jury's

9  issue to decide.  Regardless, we understand that there's a

10  split between the circuits and it is up to the judge's

11  discretion whether that falls into just compensation or not.

12  The issue is Rule 71.1 says the jury is the decision-maker

13  when it comes to just compensation.  Just compensation is the

14  difference in value of the property before and after and

15  that's what they need to decide:  What is the property

16  before, and that value; and what is the property after, and

17  that value?  That's the nature of just compensation, and

18  that's for the jury to determine.  That is explicitly stated

19  in Rule 71.1.

20          U.S. v. Reynolds is a case about the scope of the

21  project rule.  Your Honor may remember that issue from the

22  Granby case our firm tried several years ago.  That's a

23  collateral issue that doesn't go to just compensation.  In

24  this case, the property before is the main bedrock of what

25  just compensation is based on and that's what the unity of

1  lands doctrine goes to.  That should be an issue for the jury

2  to determine as was found by the Fifth Circuit and Southern

3  District of California.  But even beyond that, Your Honor,

4  this is not an issue that needs to be determined before the

5  jury hears evidence.  The Seventh Circuit case that they're

6  relying on talks about a trial occurring and evidence being

7  presented and then the judge making a determination on what

8  is the larger parcel and what is the unity of lands doctrine

9  and how that applies, and then instructing the jury

10  appropriately on it.  So it is not an issue that needs to be

11  decided before the trial occurs.  It is an issue for the

12  jury, but if the Court disagrees with that, it's not

13  something that needs to be decided beforehand.  As the

14  Seventh Circuit has recognized, that is an issue that can be

15  determined and instructed to the jury after the evidence is

16  presented at trial.

17        That would be our position, Your Honor.  ACP even

18  recognizes that in the very pretrial order that was filed

19  yesterday.  If you look on page 7, subsection 6, they agree

20  it's a contested issue of law that does not require a ruling

21  before trial, which is whether the court or the jury decides

22  whether there's a unity of use between the subject property.

23  That was a joint pretrial order filed yesterday saying it's

24  not an issue to be decided before the day of trial.  Several

25  hours later, they turn around and file a brief taking the

exact opposite position, contrary to the case law they even

cite.

THANK you, Your Honor.

THE COURT:  Okay.

MR. HOLZHEIMER:  Your Honor, there is not a split

amongst the circuit.  U.S. v. Reynolds is a Supreme Court

case and it's very clear.  And I quote, "The court tries all

issues, including compensation, except where a jury is

demanded on compensation."  It goes on, "The courts have

interpreted all issues to include all factual issues."

To the extent there's a split in the circuit, which

we don't believe there is, in a Fourth Circuit opinion,

Columbia Gas v. 76 Acres that we cited in our brief, which

was the Fourth Circuit in 2017 -- that was a matter that I

argued, Your Honor.  There, the Fourth Circuit said, Reverse

the district court because the district court erroneously

permitted the jury to determine a factual matter as to the

size of the temporary easement.  Obviously, we're dealing

with larger parcels versus temporary easement, but this is

the exact same issue that came up in Columbia Gas v. 76 Acres

that I had to deal with, with the district court judge.  The

judge wanted to make that a factual issue for the jury as to

the size and the scope of the temporary easement.  We argued

before that court, and ultimately the Fourth Circuit said it

was absolutely improper to make that a factual issue for the

1   jury, and reversed the trial court.  This is exactly the same

2   issue, Your Honor.  The only issue that goes to the jury,

3   factual or otherwise is:  What is the compensation for the

4   property?  To the extent there are any other factual issues,

5   specifically unity of lands, that has to be decided by the

6   court and then once the court makes that decision, the jury

7   will be instructed as to the court's finding, and they will

8   appraise it based upon the court's finding.  There's not a

9   single case that says otherwise.

10      Your Honor, if there's a split in the circuit, the

11  Fourth Circuit ruled in 2017 and reversed the district court

12  for making it a factual issue before the jury.  We believe it

13  would be improper.

14      THE COURT:  I don't see how, though, I could really

15  decide it without looking at the property.  I mean --

16      MR. HOLZHEIMER:  Your Honor, the Court could have

17  evidence and the Court can have evidence here.  The factual

18  under-basis, as Mr. Harvey noted in his opinion, where he

19  went through all the reasons why human rights did not apply,

20  the Court could have an evidentiary hearing on that, and Mr.

21  Harvey has identified all the reasons why.  The residence has

22  nothing to do with the house.  I have an affidavit from Mr.

23  Harvey.  He went out to do a site visit and he brought one of

24  his associates with him.  He spent the night and his

25  associate spent the night.  They had two rooms and spent the

1  night there and were supposed to do their site visit the next

2  day.  The next day, they wanted to walk around and Mrs.

3  Fenton stopped them and said, No, you cannot walk around the

4  property; you can only go to places where guests go.  So she

5  did not allow them to go into the kitchen, to the innkeeper

6  space in the basement or to anywhere else.  And importantly,

7  she would not allow them to go on to the other two parcels.

8  And I have affidavits I can give to the Court.  She said the

9  other two parcels, guests are not allowed to go there; and,

10  in fact, in his affidavit, he noted they had a pipe gate that

11  was closed to the driveway to the other two parcels and she

12  told him, You are not allowed to go past that pipe gate and

13  you are not allowed to go to the other two parcels.

14         The Court can have an evidentiary hearing.  This is

15  an admission from Mrs. Fenton.  She said, You cannot go onto

16  the property.  You can only go where guests go.  When Mr.

17  Harvey was there, that was only in the inn.  If the Court

18  wants to have an evidentiary hearing, we can present that

19  evidence to the Court and they can present whatever evidence

20  they have on that issue.  But the burden is on them.  If they

21  do not meet that burden, then the unity of lands fails.

22         THE COURT:  Okay.  Anything?

23         MR. KUNZE:  I'm not sure, Your Honor, what the

24  relevance is of the parts of the property that Mr. Harvey

25  inspected or not.  I've not seen these affidavits that Mr.

1  Holzheimer has referenced and I'm not aware of what his

2  claims are at this point. But that has nothing to do with

3  the legal issue before the Court now as to whether there

4  needs to be an evidentiary hearing before the trial occurs.

5  In the Fifth Circuit case they cite, described the fact a

6  trial was held, and then the Court, based on the evidence

7  presented at trial, made a determination as to whether the

8  larger parcel portion, unity of lands doctrine applied. So

9  there's no support for the fact some sort of evidentiary

10 hearing needed to occur prior to any type of trial happening.

11       The difference between interpretations of what

12 happened at the site view Mr. Harvey attended, I'm not aware

13 of. I haven't seen these affidavits. But if they wanted to

14 request additional views, they could have done that and that

15 would have been proper. But that has nothing to do with the

16 legal question of whether there needs to be an evidentiary

17 hearing prior to this, and none of the courts have said

18 that's required. So that's really the issue before the Court

19 now, whether the larger parcel theory applies and when that

20 determination is made, and there's absolutely no precedence

21 or requirements that an evidentiary hearing occurs. In fact,

22 to the contrary. The case law says it doesn't occur prior to

23 trial.

24       THE COURT: What about the Fourth Circuit case he

25 cites saying the judge has to --

1    MR. KUNZE:  That's the size of the easement, Your

2    Honor.  I wholeheartedly concede that that's not an issue of

3    just compensation or a determination of just compensation.

4    That's a factual issue outside of that.  That's covered under

5    Rule 71.1.  The value of the property before is part of the

6    just compensation and that's what the parties are arguing

7    over.  What is the value of the property for?  They say the

8    value of the property before only includes the one parcel and

9    the inn building.  Our expert says the property before

10   includes all three parcels.  That's the bedrock, the basis

11   for just compensation.  If you don't have the value of the

12   property before, you can't calculate what just compensation

13   is.  There's nothing else that can be included in that other

14   than the value before and the value after and the difference

15   between the just compensation.

16        Regardless of whether the Court rules the jury

17   determines that or the Court makes that finding, there's no

18   requirement that occur before trial happens.

19        MR. HOLZHEIMER:  As a practical matter, Your Honor,

20   it has to occur before the jury hears evidence because the

21   valuation of the property is based on -- is it 2.9 acres or

22   is it 20 acres?  It's very analogous to the Columbia Gas

23   case, which the Fourth Circuit ruled on.  There, it said,

24   "The district court erroneously permitted the jury to

25   determine a factual matter, the size of the temporary

easements."

Here, what they want to argue is to make the jury determine the factual issue of the size of the parcel at issue, whether it's 2.9 acres or 20 acres.  It's very analogous to what the Fourth Circuit correctly ruled on and said that is improper for the jury to decide that.

So as a practical matter, are there cases that say the Court needs to determine this before trial?  I'm not going to say there's not a case on it, but there's no way either side can present evidence to this jury as to the fair market value of the property when we can't even start with what's the size of the property we're valuing.  Is it 3 acres, 2.9 acres, or 20?  So how can the jury understand when they hear Harvey value 2.9 acres, and they hear Ray say it's 20 acres?  And they'll have to figure out which property, how big it is, and they'll be asked to make this exact same issue the court did in <u>Columbia Gas</u> that the Fourth Circuit said is improper.  So is there a case that says the Court needs to have it?  No.  But there's no practical way this jury could hear evidence about fair market value --

THE COURT:  They could give opinions.  If it's one parcel, my opinion is this, and if it's two or three, my opinion is something else.

MR. HOLZHEIMER:  Your Honor, this is getting very confusing for a jury.

1      THE COURT:  I know, but we're up on the date of the

2  trial.  There's not a lot of time.

3      MR. HOLZHEIMER:  We are up on the date of trial.

4  That's why this issue has come up.  The burden is on them to

5  raise this issue, factually.  The burden is on them on all of

6  these issues, on valuation.  So we've prodded them --

7      THE COURT:  They say it's the whole property.

8      MR. HOLZHEIMER:  They presented no evidence, though,

9  for this Court to make that determination, and there's no

10  evidence, nor should they present any evidence to make that

11  determination either.  And the jury shouldn't have to hear

12  multiple valuation scenarios and hypotheticals because it's

13  not just the size of the property but gets into:  Is the

14  residence and inlaw suite on the residence included as part

15  of the inn?  If the jury hears this and has to create

16  hypothetical verdicts, it's going to be confusing --

17      THE COURT:  I'm not talking about hypothetical

18  verdicts.  The experts could give -- Ray would give his

19  opinion, and I suppose you would ask, Well, if it's not

20  20 acres, but only the one parcel, what would your opinion

21  be?

22      MR. HOLZHEIMER:  We can do that, Your Honor, but I

23  fear it will be very confusing for the jury versus -- again,

24  there's no direct law as to how the Court should do this, but

25  I think, as a practical matter, it would be confusing to the

1    jury versus --

2        THE COURT:  If the Court is supposed to make the

3    determination, it would be, as a practical matter, better to

4    get it out of the way up front.

5        MR. HOLZHEIMER:  Agreed.

6        THE COURT:  But at this point, I'm worried about how

7    to get that done without -- I don't like to have a jury

8    waiting around for us to do something.

9        MR. HOLZHEIMER:  I understand.  I'm just trying to

10    think of this jury, if, you know -- if the case law is clear,

11    and I think it is, the Court needs to make this factual

12    determination.  Obviously, it's within the Court's

13    discretion, but giving the jury multiple scenarios, I think,

14    would be very difficult for them.

15        THE COURT:  I might have to think this over.

16        Did you want to say anything else about this?

17        MR. KUNZE:  Just real briefly, Your Honor.

18        This is from the case that they cite, the Fifth

19    Circuit case regarding the temporary easement, which is not

20    the same thing, here, but citing to Reynolds, the Court held

21    that the district judge should decide the factual question of

22    whether the condemned parcels here are integral and then the

23    judge should then instruct the jury on the issue of just

24    compensation consistent with his preliminary factual

25    determinations.  That's how the case that they cited dealt

1    with this issue.  The evidence was presented and then the

2    court made an instruction to the jury as to the factual

3    findings that were made.  That was done all at trial and

4    that's how it has been done in precedent and there's no case

5    law or directive to have an evidentiary hearing before.

6              Thank you.

7              THE COURT:  Let's go to the next.

8              MR. HOLZHEIMER:  I believe the last issue, Your

9    Honor, is an issue as to whether or not the temporary

10   easement should come up at trial.

11             So as the Court is aware, we've amended the areas of

12   take.  It's been determined that we do not need the temporary

13   easement space.  It's never been used.  The trees that were

14   on there are still in place and it was determined it would

15   never be used.  So the certificate of take was amended and

16   that was filed in accordance with the rules that allow us to

17   amend prior to trial, and that was done.  I don't think

18   there's any issue with that.

19             So the temporary easement, Your Honor, is no longer

20   before the jury and it's not part of this condemnation.  In

21   the pretrial order, they suggested that they do want to bring

22   up the temporary easement, and they want to bring it up for

23   the period of time that it was part of this lawsuit.  I

24   believe they said it's about 16 months or so.

25             Your Honor, one, we don't think it should go before

the jury because it is definitely not part of this

condemnation. Two, to the extent there's any argument about,

Well, you did have it as part of this and did have access to

it for 16 months -- Your Honor, both counsel have worked

together previously and what we did was we did enter into a

stipulation and a payment was made for that stipulation that

allowed us to have access to that before the final

determination to the jury. The landowners were well

compensated for that access. They were paid a large sum of

money. What that stipulation was -- and our agreement with

them was, We will pay you this money so we can have access

and we will pay for the use of the permanent space and the

temporary easement space during the pendency of trial. We'll

pay you a large sum of money so we can use it until the jury

verdict comes in and we get the actual title to the property.

Both counsel worked together well and we came up with a

number. We paid it to them. So they've been fully

compensated for any use of the temporary easement during the

pendency of this litigation while it was a part of it. While

it was a large sum of money, but to put it in context -- it

was a large sum of money for access, but their appraisal is

about 280-some dollars -- under $300. Your Honor, they've

been well compensated for 16 months per our stipulation.

        Alternatively, we've always said we didn't think the

jury should ever need to get into the temporary easement and

1    all the issues that come from that --

2        THE COURT:  Does the agreement they reached give you

3    immediate access?  Did it contemplate to be compensated

4    further for it?

5        MR. HOLZHEIMER:  It was without prejudice for them to

6    seek additional compensation.

7        But, Your Honor, their own experts and all their

8    testimony and discovery responses value the temporary space

9    at $300.  Months ago, we said, We'll pay you the $300; why is

10   this even an issue?  Our expert was at 300.  I believe their

11   expert was at 287.  In order to take one of the issues off,

12   months ago, we offered to pay them the $300.  It wasn't worth

13   the issue for the jury.

14       THE COURT:  Okay.

15       MR. HOLZHEIMER:  So we think they've been fully

16   compensated.

17       Your Honor, again, if there's an issue, we'll pay

18   them $300 now, and that was for five years of use.  This is

19   not an issue that needs to go to the jury.

20       MR. KUNZE:  Your Honor, I think in light of the

21   Court's rulings today on the predicate witnesses and then the

22   noise and vibration, I think if ACP is still willing to

23   stipulate to the $300, I think that removes this issue from

24   disagreement.  So I think we can stipulate, if they're

25   willing to pay the $300, based on the Court's ruling today.

1           THE COURT:  Thank you.

2           Anything else then?

3           There was a motion to exclude Harvey's opinions.

4           MR. KUNZE:  We withdraw that based on the Court's

5    ruling earlier as well.

6           THE COURT:  I was going to say there's no opinion

7    written, but I decided not to exclude it.

8           Anything else today?

9           MR. KUNZE:  I'm not aware of anything else, Your

10   Honor.

11          MR. HOLZHEIMER:  No, Your Honor.

12          THE COURT:  I'll try to come up with -- I want to get

13   this thing right about what the Court has to decide and what

14   the jury has to decide.  I've only tried one of these federal

15   condemnation cases, as I recall -- well, I've tried two, one

16   in Norfolk.  But I had a pipeline over in Louisa County.

17          THE CLERK:  I think it was Orange.

18          THE COURT:  Henry Howell, III.

19          Pretty much, I'm used to trying them the way we did

20   in the state court, but we'll do it the way it has to be

21   done.

22          If you all need to get in touch with me, you can get

23   together and we'll be around.

24          MR. HOLZHEIMER:  Thank you, Your Honor.

25          MR. KUNZE:  Thank you, Your Honor.

1      THE COURT:  Thank you.

2         (Proceedings concluded at 3:12 p.m.)

3

4

5

6

7

8

9

10   "I certify that the foregoing is a correct transcript from

11   the record of proceedings in the above-entitled matter.

12

13

14   /s/Sonia Ferris                    July 8, 2019"

15

16

17

18

19

20

21

22

23

24

25